UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

MANUEL WINN,

                    Plaintiff

    v.

JAMES DZURENDA, et al.,

                    Defendants

Case No. 2:19-cv-00613-KJD-NJK

SCREENING ORDER

Plaintiff, who is in the custody of the of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis.* (ECF Nos. 1, 1-1.) The matter of the filing fee shall be temporarily deferred. The Court now screens Plaintiff's complaint pursuant to 28 U.S.C. § 1915A.

## I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a

claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff.  *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is insufficient.  *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."  *Id.*  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.    SCREENING OF COMPLAINT

In his complaint, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at High Desert State Prison ("HDSP"), Southern Desert Correctional Center ("SDCC") and Saguaro Correctional Center ("SCC"). (ECF No. 1-1 at 1.) Plaintiff sues Defendants James Dzurenda, Brian Stroud, Brian Williams, Timothy Filson, Sgt Vangela Thompson, D. Fierro, Stephen George, Oliver, Estell, Jordan Evangelista, Robert J. Meares, Romero Aranas, Jo Gentry, Frank Dreeson, Damon Hininger, Todd Thomas, D. Marr, J. Warner, J. Valenzuela, Loza, A. Grijalva, Torres, Escolata, and Jennifer Nash. (*Id.* at 1-6.) Plaintiff alleges nine counts and seeks injunctive and monetary relief. (*Id.* at 8-32.) The Court will consider each of Plaintiff's claims in turn.

### A.  Count I

In Count I, Plaintiff alleges that on June 7, 2016, an inmate named David Bloodsaw got into a fight with his cellmate inmate. (ECF No. 1-1 at 9.) After being informed of this fight, Thompson ordered Estell to place Bloodsaw in Plaintiff's cell. (*Id.*) Bloodsaw suffered from well documented mental health ailments, including schizophrenia, paranoia, and bi-polar disorder. (*Id.* at 8.) Approximately one week later, Plaintiff filed an emergency grievance requesting to be placed in a separate cell because Bloodsaw was

"acting crazy and was repeatedly threatening to physically attack Plaintiff."  (*Id.* at 9.) Thompson responded that the issue did not constitute an emergency and that Plaintiff should write to mental health staff about the issue.  (*Id.*)  Thompson placed Bloodsaw in Plaintiff's cell and denied his grievance because Plaintiff had filed both a grievance and a civil rights complaint against her.  (*Id.*)

After Thompson denied Plaintiff's grievance, Plaintiff filed a second emergency grievance raising the same issues.  (*Id.* at 10.)  Oliver denied the emergency grievance, stating that the issue was not an emergency and that Plaintiff should submit an informal grievance instead.  (*Id.*)  Plaintiff wrote to Nash, who did not do anything to protect him.  (*Id.*)  Plaintiff also asked Evangelista for help, but Evangelista just told him to file another grievance or another lawsuit.  (*Id.*)  Plaintiff had previously filed both grievances and a lawsuit against Evangelista.  (*Id.*)

On June 29, 2016, Bloodsaw attacked Plaintiff.  (*Id.* at 8.)  After 10 minutes, guards stopped the attack.  (*Id.*)  A nurse wiped the blood from Plaintiff's face and slowed the bleeding from his neck and mouth.  (*Id.*)  Based on these allegations, Plaintiff brings claims under the First, Fifth, Eighth, and Fourteenth Amendments.  (*Id.* at 10.)

As an initial matter, the Court notes that any due process claims against state prison officials are grounded in the Fourteenth Amendment rather than the Fifth Amendment.  *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (holding that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States.")  As such, the Court dismisses all of Plaintiff's Fifth Amendment claims in the complaint with prejudice, as amendment would be futile.  The court will not further address any other Fifth Amendment claims.  The Court will consider Plaintiff's other claims in turn.

### 1.  First Amendment

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

"Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."  *Id.*

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Id.* at 567-68.  Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.  *Id.* at 568-69.

The Court finds that Plaintiff states a colorable First Amendment claim against Defendants Thompson and Evangelista.  The Court liberally construes the complaint as alleging that Plaintiff had filed both grievances and lawsuits against these Defendants.  In retaliation for Plaintiff's grievances and lawsuits, Thompson had a dangerous inmate with known mental health issues placed in Plaintiff's cell.  Thompson and Evangelista then both refused Plaintiff's requests to be placed in a separate cell from the dangerous inmate when he notified them that the inmate was threatening him.  These allegations are sufficient to state a colorable claim on screening.  This claim will proceed against Defendants Thompson and Evangelista.

### 2.  Eighth Amendment

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.  *Id.* at 834.  To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an

1   excessive risk to inmate . . . safety; the official must both be aware of facts from which

2   the inference could be drawn that a substantial risk of serious harm exists, and [the

3   official] must also draw the inference." *Id.* at 837.  Prison officials may not escape liability

4   because they cannot, or did not, identify the specific source of the risk; the serious threat

5   can be one to which all prisoners are exposed.  *Id.* at 843.

6          The Court finds that Plaintiff states a colorable Eighth Amendment claim.  The

7   Court liberally construes the complaint as alleging that Defendants Estell, Thompson,

8   Evangelista, Oliver, and Nash were each aware that a dangerous inmate with known

9   mental health issues had been placed in Plaintiff's cell.  Despite repeated requests from

10  Plaintiff stating that the inmate had threatened him, none of these Defendants acted to

11  protect Plaintiff.  The inmate then attacked Plaintiff, causing significant injuries.  These

12  allegations are sufficient state a colorable claim on screening.  This claim will proceed

13  against Defendants Estell, Thompson, Evangelista, Oliver, and Nash.

14                          **3.  Fourteenth Amendment**

15         Plaintiff does not explain the basis of his Fourteenth Amendment claim, and none

16  of the allegations in the complaint appear to raise a Fourteenth Amendment issue.  To

17  the extent that Plaintiff is trying to raise a claim based on the denial of his grievances, the

18  Court notes that prisoners have no stand-alone due process rights related to the

19  administrative grievance process.  *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)

20  (holding that a state's unpublished policy statements establishing a grievance procedure

21  do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d

22  850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of

23  appeals because there is no liberty interest entitling inmates to a specific grievance

24  process).  Thus, Plaintiff cannot state a colorable due process claim based on the denial

25  of grievances.  Because the Court is not sure what claim Plaintiff may be trying to bring,

26  the Court dismisses any Fourteenth Amendment claim without prejudice.

27                          **4.  Other Defendants**

28         In Count I, Plaintiff lists ten separate Defendants, including Dzurenda, Stroud,

Williams, Filson, and George, about whom there are no specific allegations.  (ECF No. 1-1 at 8.)  Plaintiff then alleges generally that these ten Defendants acted individually and in concert to violate his rights.  (*Id.* at 8.)  Plaintiff thereafter makes several general allegations about the "Defendants" collectively, such as stating that the Defendants were informed about his issue with his new cellmate.  (*Id.* at 8-9.)

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

A generic allegation that the Defendants knew about some issue or that the Defendants pursued some course of action is insufficient to demonstrate that any individual Defendant was personally involved.  To state a colorable claim against any particular Defendant, the complaint must specifically allege how that individual Defendant participate in any alleged constitutional violation.  Because there are no specific allegations about Dzurenda, Stroud, Williams, Filson, or George in Count I, the Court dismisses them from Count I without prejudice.

Furthermore, the Court notes that Plaintiff uses similar generic allegations about the "Defendants" in Counts II-IX.  For these counts, the Court will only discuss Defendants against whom there are specific allegations.  Any Defendant that the Court does not discuss is dismissed form that count without prejudice.

### B. Count II

In Count II, Plaintiff alleges that he practices orthodox Islam.  (ECF No. 1-1 at 11.)  A central tenet of his religious beliefs is the practice of Friday congressional prayers,

known as Jumah.  (*Id*.) Warner, the prison chaplain, told Plaintiff that Warden Thomas was ordered not to allow Nevada inmates housed at SCC to mingle with Hawaiian inmates for security reasons.[1]  (*Id*.)  The complaint is not entirely clear, but it appears Hawaiian inmates may have priority for the chapel on Fridays.  (*Id*. at 11-12.)

Plaintiff filed several grievances about the issue, but he did not receive any response.  (*Id*. at 12.)  Plaintiff then sent his complaints to NDOC officials, and Meares responded that his complaint had been forwarded to the inspector general's office, but nothing else has been done.  (*Id*.)  Plaintiff spoke directly to Warden Thomas about the issue and told Thomas that Plaintiff does not need access to the chapel and that he could pray almost anywhere.  (*Id*.) But Thomas has refused to accommodate Plaintiff's request.  (*Id*.)

Based on these allegations, Plaintiff claims that the Defendants violated his First and Fourteenth Amendment rights, as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  (*Id*.)  The Court will consider Plaintiff's claims in turn.

### 1.  First Amendment and RLUIPA

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof.  U.S. Const. amend. I.  The United States Supreme Court has held that inmates retain protections afforded by the First Amendment "including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  "In general, a plaintiff will have stated a free exercise claim if: (1) 'the claimant's proffered belief [is] sincerely held; and (2) 'the claim [is] rooted in religious belief, not in purely secular philosophical concerns.'"  *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015). The Supreme Court has recognized that an inmate's "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological

---

[1] SCC is a prison in Eloy Arizona, and it houses Nevada State prisoners, as well as prisoners from other states.  (ECF No. 1-1 at 11.)

objectives–including deterrence of crime, rehabilitation of prisoners, and institutional security." *Id.* During summary judgment, courts evaluate prison regulations alleged to infringe on constitutional rights under the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Shabazz*, 482 U.S. at 349; *see Hrdlicka v. Reniff*, 631 F.3d 1044, 1046-50 (9th Cir. 2011) (analyzing the *Turner* factors applied during summary judgment on appeal).

RLUIPA provides in relevant part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person–(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).

"Claims brought under RLUIPA are subject to a strict scrutiny standard, which replaces the reasonableness standard employed in cases involving constitutional violations." *Shilling v. Crawford*, 536 F.Supp.2d 1227, 1232 (D. Nev. 2008).

RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C.A. § 2000cc-3(g)). The plaintiff bears the burden of demonstrating a prima facie claim that the prison's policies or actions constitute a substantial burden on the exercise of his religious beliefs. *Id.* at 994.

The Court finds that Plaintiff states colorable claims under the First Amendment and RLUIPA. The Court liberally construes the complaint as alleging that Plaintiff practices orthodox Islam and that Friday prayers, known as Jumah, are a central tenet of his religious beliefs. Plaintiff is not allowed in the chapel on Fridays because of a restriction against allowing Nevada State prisoners to interact with Hawaiian inmates.

However, Plaintiff does not need access to the chapel to practice Jumah, he can observe Jumah prayers almost anywhere.  Plaintiff has informed Defendants Warner, Thomas, and Meares about his religious needs, but none of them have acted to ensure that he is provided accommodations to observe Jumah prayers.  These allegations are sufficient to state a colorable claim on screening.  This claim will proceed against Defendants Warner, Thomas, and Meares.

### 2.  Fourteenth Amendment

Plaintiff also brings an equal protection claim under the Fourteenth Amendment. (ECF No. 1-1 at 12.)   In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Conclusory allegations of motive are insufficient; specific, non-conclusory factual allegations are required. *Jeffers v. Gomez*, 267 F.3d 895, 913-14 (9th Cir. 2001).

In *Olech*, the Supreme Court explicitly addressed "whether the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group." *Olech*, 528 U.S. at 564. The Supreme Court ruled in the affirmative and "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*; *see also Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (recognizing that an equal protection claim may be maintained in some circumstances even if the plaintiff does not allege class-based discrimination, "but instead claims that she has been irrationally singled out as a so-called 'class of one' ").

However, although the Supreme Court has acknowledged the class-of-one theory of equal protection, it has held that the theory applies only in certain limited

circumstances; it does not apply when the state actions "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist*, 553 U.S. at 603 (holding that the class-of-one theory does not apply in the public employment context); *see also Towery v. Brewer*, 672 F.3d 650, 660-61 (9th Cir. 2012). "[A]llowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such officials are entrusted to exercise." *Engquist*, 553 U.S. at 604 (recognizing that a traffic officer does not violate the Equal Protection Clause merely because the officer gives tickets to only some speeding drivers). The Supreme Court has recognized that the problem with allowing class of one claims to go forward in a context where government officials are necessarily making subjective, individualized decisions is that the government will be forced to defend a multitude of such claims and courts will be obliged to go through them in search of the rare needle in a haystack. *Engquist*, 553 U.S. at 608-09.

Thus, a person cannot state an equal protection claim merely by dividing all persons not injured into one class and alleging that they received better treatment than the plaintiff did. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). The Fourteenth Amendment's Equal Protection Clause does not require that states treat all persons within their borders identically. *See McGowan v. Maryland*, 366 U.S. 420, 425 (1961) ("the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others" so long as the classification does not rest on grounds "wholly irrelevant to the achievement of the State's objective"); *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  Furthermore, to state a class of one equal protection claim, Plaintiff must identify the group of individuals with whom he is similarly situated, identify the allegedly intentional and disparate treatment, and allege that there was no rational basis for the different treatment. *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011); *Chappell v. Bess*, No. 2:01-CV-01979 KJN P, 2012 WL 3276984, at *19–21 (E.D. Cal. Aug. 9, 2012). "Similarly situated" persons are those "who are in all relevant respects alike." *Nordlinger*

1   *v. Hahn*, 505 U.S. 1, 10 (1992).

2        The Court finds that Plaintiff fails to state a colorable Fourteenth Amendment claim.

3   Plaintiff states that he is bringing a class-of-one claim based on the allegation that he is

4   a general population inmate and should be afforded the same rights as other inmates.

5   (ECF No. 12.)  But Plaintiff does not allege that he is being treated differently from any

6   other similarly situated individuals.  Plaintiff alleges that there is a rule prohibiting Nevada

7   State prisoners from interacting with Hawaiian inmates for security reasons and that as a

8   result he does not have access to the chapel on Fridays.  He also alleges that Warden

9   Thomas will not provide him any alternative to the chapel for prayer.  But Plaintiff does

10   not allege that any other Nevada State prisoner has been allowed access to the chapel

11   when Hawaiian inmates are present or that Thomas has given any other inmate

12   permission to conduct prayers somewhere other than the chapel.  As such, Plaintiff has

13   not alleged that he has been treated differently than similarly situated individuals, and the

14   Court dismisses this claim without prejudice.

15        **C.  Count III**

16        In Count III, Plaintiff alleges that, after he arrived at SCC, he was denied any

17   access to the court or a law library for several months.  (ECF No. 1-1 at 13.)  Eventually

18   Plaintiff, along with 200 other inmates, was given access to a single portable kiosk with a

19   Lexis Nexis program.  (*Id.*)  The 200 inmates are given access to the kiosk for a total of

20   45 minutes on Mondays and another 45 minutes on Fridays.  (*Id.* at 14.)  Nobody is

21   available to help inmates navigate the kiosk or to provide legal assistance.  (*Id.*)  Plaintiff

22   filed grievances about the issue both with SCC and with NDOC officials.  (*Id.*)

23        Plaintiff alleges that as a result of the lack of access to legal materials, his

24   "complaint was dismissed for failure to satisfy technical requirements needed by Plaintiff

25   to secure witnesses' appearance in Court" and that the witnesses' testimony would have

26   proven his case.  (*Id.*)  Based on these allegations, Plaintiff claims that his right to access

27   to the courts was violated.  (*Id.* at 13.)

28        Prisoners have a constitutional right of access to the courts.  *See Lewis v. Casey*,

518 U.S. 343, 346 (1996).  This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  This right, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356.  It is this "capability, rather than the capability of turning pages in a law library, that is the touchstone" of the right of access to the courts.  *Id.* at 356-57.

The right of access to the courts does not confer a right to discover grievances or to litigate them effectively once in court. *See Lewis*, 518 U.S. at 354-55; *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995) ("[W]e conclude the Supreme Court has clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action."); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (stating that the right to legal assistance is limited to the pleading stage.).

To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived.  *Id.* at 349.  An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim."  *Id.* at 348.  Delays in providing legal materials or assistance that result in actual injury are "not of constitutional significance" if "they are the product of prison regulations reasonably related to legitimate penological interests."  *Id.* at 362.  The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions.  *Id.* at 353 n.3, 354-55.

The Court finds that Plaintiff fails to state a colorable claim of denial of access to the Courts.  As an initial matter, although Plaintiff refers to a complaint, he does not allege that it was part of a criminal appeal, habeas corpus proceeding, or § 1983 action.

Furthermore, Plaintiff does not allege facts sufficient to demonstrate that his complaint was not frivolous.  Finally, Plaintiff does not allege that he was unable to bring his claims, rather, it appears that he had a problem securing witnesses.  But the right to access to the courts for criminal appeals, habeas corpus proceedings, and § 1983 actions does not extend past the pleading stage and does not guarantee the ability to litigate effectively. The allegations in the complaint are insufficient to demonstrated that Plaintiff suffered any actual injury.  Accordingly, The Court dismisses this claim without prejudice.

## D.  Counts IV and V

Counts IV and V both concern Plaintiff's transfer to SCC, and the Court will consider these claims together.  In these counts, Plaintiff alleges that prior to the decision to transfer Nevada state prisoners to SCC, Dzurenda, the director of NDOC, gave an interview in which he stated that Nevada's most dangerous inmates would be transferred to SCC, including those who recruit gang members, extort others, and cause fear among others. (ECF No. 1-1 at 15.)  Plaintiff is not a gang member and has never extorted or intimidated others.  (*Id.*)  Nonetheless, Dzurenda ordered Plaintiff to be transferred to SCC.  (*Id.* at 18.)

Plaintiff has filed multiple grievances and lawsuits during his time in NDOC custody, including multiple grievances since he was transferred SCC.  (*Id.* at 15-16.) Following some of those grievances, he was retaliated against in various ways, including losing his job as a barber, having his legal documents thrown away, and having a dangerous inmate placed in his cell.  (*Id.*)  Plaintiff alleges that he was transferred to SCC as result of his various grievances.  (*Id.* at 16.)

While in SCC, Plaintiff has had inadequate access to the law library and to religious services.  (*Id.*)  Plaintiff was transferred from low medium custody in Nevada to high level maximum custody at SCC.  (*Id.*)  As a result, Plaintiff has lost multiple privileges such as access to the gym and fosse ball and handball competitions.  (*Id.*)  Based on these allegations, Plaintiff claims that Dzurenda violated his First Amendment rights, as well as his rights to due process and equal protection under the Fourteenth Amendment.  (*Id.* at

15, 18.)  The Court will consider these claims in turn.

### 1.  First Amendment

It appears that Plaintiff is bringing a First Amendment retaliation claim based on Dzurenda's decision to transfer Plaintiff to SCC.[2]  The Court finds that Plaintiff fails to state a colorable claim.  Plaintiff alleges that he has filed multiple grievances and lawsuits, some of which appear to have been filed after Plaintiff was transferred to SCC.  Plaintiff also alleges that after some of those grievances and lawsuits, he suffered various forms of retaliation.  But none of those allegations demonstrate either that Dzurenda knew of Plaintiff's grievances and lawsuits, or the Dzurenda made the decision to transfer Plaintiff to SCC as a result of those grievances.  As such, the allegations do not support that Dzurenda transferred Plaintiff because of Plaintiff's protected conduct, and the allegations do not state a colorable First Amendment retaliation claim.[3]  The Court dismisses this claim without prejudice.

### 2.  Due Process

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  *Sandin v. Conner*, 515 U.S. 472, 487 (1995).  In *Sandin*, the Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 484.  In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population

---

[2] The standard for stating a First Amendment retaliation claim is addressed in Section II(A)(1)

[3] To the extent that Plaintiff is trying to bring First Amendment retaliation claims based on any of the specific alleged retaliations, such as destruction of his legal documents, these allegations suffer from the same flaw.  Plaintiff alleges generally that the "Defendants" retaliated against him, but he does not identify any specific Defendant or allege that any specific Defendant was aware of Plaintiff's protected conduct and took the adverse action as a result of that protected conduct.

showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected.  *Id.* at 486-87.

Plaintiff appears to be attempting to state a due process claim based on the allegation that he was transferred to another prison, his classification status was changed, and he lost various privileges, including access to a gym and various athletic competitions.  But inmates due not have a liberty interest in their prison, classification status, or prison programming.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (holding that "an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no liberty interest in their classification status); *Brown v. Sumner*, 701 F. Supp. 762, 764 (D. Nev. 1988) (finding that "[i]n general, prisoners have no fourteenth amendment due process rights to participate in a work, educational, or vocational training program").  As such, Plaintiff has not established that he had a liberty interest in avoiding a transfer to SCC.  The Court dismisses this claim without prejudice.

### 3.  Equal Protection

The Court finds that Plaintiff fails to state a colorable Fourteenth Amendment equal protection claim.[4]  Plaintiff does not explain the basis of his equal protection claim.  He does not identify any similarly situated inmates who were treated differently than him.  Furthermore, to the extent that Plaintiff is trying to bring an equal protection claim based on the decision to transfer him to SCC, such decision making would appear to be based on the sort of subjective, individualized assessments that are not subject to equal protection claims.  The Court dismisses this claim without prejudice.

### E.  Count VI

In Count VI, Plaintiff alleges that he has a lipoma the size of a cantaloupe located at the base of his neck, directly between his shoulder blades.  (ECF No. 1-1 at 20.)  This causes Plaintiff severe pain for which he needs special pain treatments and very potent

---

[4] The standard for stating a colorable Fourteenth Amendment equal protection claim is discussed in Section II(B)(2).

1  pain medications, which are taken several times a day.  (*Id.*)  Prior to his transfer to SCC,

2  Plaintiff was scheduled to have surgery to remove the lipoma, but that surgery has been

3  canceled.  (*Id.* at 21.)  As a result of the lack of surgery, Plaintiff is in daily pain.  Plaintiff

4  has written several medical kites and grievances requesting adequate medical treatment

5  to Hininger, Thomas, Dzurenda, Meares, and Marr, but none of them have addressed his

6  requests.  (*Id.* at 20-21.)  Based on these allegations, Plaintiff brings a claim of deliberate

7  indifference to a serious medical need.  (*Id.* at 20.)

8          The Eighth Amendment prohibits the imposition of cruel and unusual punishment

9  and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity,

10  and decency.'"  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).  A prison official violates the

11  Eighth Amendment when he acts with "deliberate indifference" to the serious medical

12  needs of an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "To establish an

13  Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the

14  deprivation was serious enough to constitute cruel and unusual punishment—and a

15  subjective standard—deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 985 (9th

16  Cir. 2012).

17          To establish the first prong, "the plaintiff must show a serious medical need by

18  demonstrating that failure to treat a prisoner's condition could result in further significant

19  injury or the unnecessary and wanton infliction of pain."  *Jett v. Penner*, 439 F.3d 1091,

20  1096 (9th Cir. 2006) (internal quotations omitted).  To satisfy the deliberate indifference

21  prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain

22  or possible medical need and (b) harm caused by the indifference."  *Id.*  "Indifference may

23  appear when prison officials deny, delay or intentionally interfere with medical treatment,

24  or it may be shown by the way in which prison physicians provide medical care."  *Id.*

25  (internal quotations omitted).  When a prisoner alleges that delay of medical treatment

26  evinces deliberate indifference, the prisoner must show that the delay led to further injury.

27  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)

28  (holding that "mere delay of surgery, without more, is insufficient to state a claim of

1   deliberate medical indifference").

2        The Court finds that Plaintiff states a colorable claim of deliberate indifference to a

3   serious medical need.  The Court liberally construes the complaint as alleging that Plaintiff

4   has a lipoma the size of a cantaloupe on the back of his neck.  The lipoma causes him

5   severe daily pain.  At one point, Plaintiff had been scheduled to have the lipoma removed,

6   but that surgery was canceled when Plaintiff was transferred to SCC.  As a result, Plaintiff

7   continues to experience daily pain. Plaintiff informed Hininger, Thomas, Dzurenda,

8   Meares, and Marr about his medical needs, but none of them acted to ensure that his

9   medical needs were met.  These allegations are sufficient to state a colorable claim on

10  screening.  This claim will proceed against Defendants Hininger, Thomas, Dzurenda,

11  Meares, and Marr.

12        **F.  Count VII**

13        In Count VII, Plaintiff repeats all the facts discussed in Count I.  (ECF No. 1-1 at

14  22-24.)   Plaintiff again brings claims under the First, Fifth, Eighth, and Fourteenth

15  Amendments.  (*Id.*)  As the Court has already discussed all these claims in Count I, the

16  Court dismisses the claims from Count VII.  (*Id.*)  Plaintiff also references Nevada Revised

17  Statute § 209.371, which prohibits corporal punishment and inhumane treatment of

18  inmates, and states that the Defendants had a duty to protect him.[5]  (*Id.*)  It is not clear

19  whether Plaintiff references this statute in order to strengthen his constitutional claims or

20  to bring some other claim.  The Court liberally construes the complaint as bringing a state

21  law negligence tort claim based on the alleged failure to keep Plaintiff safe from his

22  cellmate.

23        Under Nevada law, the State of Nevada has generally waived sovereign immunity

24  for state tort actions in state court. Nev. Rev. Stat. § 41.031(1). In order to sue the State

25  of Nevada or a state employee, the plaintiff is required to sue the State of Nevada or

26  appropriate political subdivision. Nev. Rev. Stat. § 41.031(2) ("In any action against the

27  _____

28        [5] It is not entirely clear, but it appears that the events underlying Counts I and VII
    took place in Nevada.

1    State of Nevada, the action must be brought in the name of the State of Nevada on

2    relation of the particular department, commission, board or other agency of the State

3    whose actions are the basis for the suit.").

4         In *Craig v. Donnelly*, the Nevada Court of Appeals addressed whether a plaintiff

5    had to name the State as party in a state court case and held that "while a plaintiff must

6    name the State as a party to any state tort claims in order to comply with NRS 41.031

7    and NRS 41.0337, this statutory requirement does not apply to 42 U.S.C. § 1983 claims,

8    even when brought in the same complaint as a plaintiff's state tort claims. 439 P.3d 413

9    (Nev. App. 2019). "Indeed, the State cannot be named as a party to a plaintiff's § 1983

10   civil rights claims." *Id.* at 414.

11        With respect to federal court cases, the State of Nevada does not waive its

12   sovereign immunity. Nev. Rev. Stat. § 41.031(3). Generally, the State of Nevada and

13   arms of the state cannot be sued in federal court. *See O'Connor v. State of Nev.*, 686

14   F.2d 749, 750 (9th Cir. 1982) (holding that "Nevada has explicitly refused to waive its

15   immunity to suit under the eleventh amendment . . . The Supreme Court has made it clear

16   that section 1983 does not constitute an abrogation of the eleventh amendment immunity

17   of the states"). In *Stanley v. Trustees of California State Univ.*, 433 F.3d 1129 (9th Cir.

18   2006), the Ninth Circuit held that 28 U.S.C. § 1367 does not abrogate state sovereign

19   immunity for supplemental state law claims. *Id.* at 1133-34. Although the State of Nevada

20   may consent to federal court jurisdiction for state law claims through removal, this is not

21   a removed case. *See Lapides v. Bd. of Univ. Sys. Of Ga.*, 535 U.S. 613 (2002) (holding

22   that state's removal of suit to federal court constitutes waiver of its sovereign immunity).

23        For this reason, the Court finds that Plaintiff must raise any state law tort claim in

24   state court and dismisses this claim without prejudice. *See Hirst v. Gertzen*, 676 F.2d

25   1252, 1264 (9th Cir. 1982) (holding that, where Montana law deemed governmental

26   entities indispensable parties in a state tort claim against a state employee, the federal

27   court had no supplemental jurisdiction over the state tort claim if it had no jurisdiction over

28   the indispensable party).

### G. Count VIII

In Count VIII, Plaintiff alleges that the Defendants deprived him of his civil rights in violation of 18 USC §§ 241-242.  (ECF No. 1-1 at 25.)  These are both criminal statutes, and Plaintiff seeks to have the Defendants punished consistent with the law of the statutes.  (*Id.* at 32.)  This is a civil action pursuant to 42 U.S.C. § 1983, not a criminal proceeding.  As such, the Court dismisses Plaintiff's attempt to bring criminal charges against the Defendants with prejudice, as amendment would be futile.

### H. Count IX

In Count IX, Plaintiff alleges that SCC has a policy forbidding inmates from helping each other with prison grievances or legal work.  (ECF No. 1-1 at 26.)  When Plaintiff asked Loza why Plaintiff had not received a prison job, Loza responded that it was because Plaintiff was helping other prisoners with their legal work, in violation of the SCC policy.  (*Id.*)  Plaintiff responded that it was essential that he help other inmates with their legal work because SCC did not provide them proper access to the law library.  (*Id.*)  Loza simply reiterated that it was against policy and told Plaintiff that he would write up a disciplinary report if Plaintiff continued to help other inmates with their legal work.  (*Id.*)

Later that day, Loza conducted a search of Plaintiff's cell.  (*Id.*)  Loza searched through Plaintiff's legal documents and took some of the documents from Plaintiff's cell.  (*Id.* at 26-27.)  Loza then brought Plaintiff to see the unit manager, who reiterated that Plaintiff was not allowed to help other prisoners with their legal work and stated that Plaintiff would get a disciplinary report over the issue.  (*Id.* at 27.)

In October 2018, Escolata, Torres, and Grijalva entered Plaintiff's cell and searched it for an hour.  (*Id.* at 27.)  Other cells were also searched, but they were only searched for approximately 10 minutes.  (*Id.*)  Grijalva repeatedly took items out of Plaintiff's cell, including a photo album, his address book, and copies of grievances that he had filed in Nevada.  (*Id.* at 27-28.)  A few weeks later, Plaintiff learned that all the property that was taken during the cell searches was being returned.  (*Id.* at 28.)  But when Plaintiff asked to have his property returned, he was told that it had been lost.  (*Id.*)

1    Plaintiff was given a form to fill out regarding the missing property.  (*Id.*)

2          In order to fill out the form, Plaintiff asked another inmate to find out from Escolata

3    what Grijalva's name was, because he did not know her name at the time.  (*Id.*)  Escolata

4    and Torres told the other inmate that they remembered the cell search and that they had

5    both told Grijalva that she was crossing the line by taking Plaintiff's personal items.  (*Id.*)

6    But Grijalva responded that she did not care.  (*Id.*)  She stated that Plaintiff liked to file

7    grievances and that she would give him something to really file a grievance about.  (*Id.*)

8    Warden Thomas and Damon Hininger were made aware of this cell search through

9    Plaintiff's grievances, but they refused to remedy Grijalva's misconduct.  (*Id.*)

10          Based on these allegations, Plaintiff alleges that the Defendants violated his First

11   Amendment rights.  The Court construes Count IX as bringing two separate claims of

12   First Amendment retaliation: one claim based on the retaliation due to Plaintiff helping

13   other inmates with their legal work and a second claim based on the improper cell search

14   in retaliation for Plaintiff's grievances.  The Court will consider each of these claims in

15   turn.[6]

16                    **1.  Retaliation for Helping Inmates with Legal Work**

17          The Supreme Court has held that inmates do not have a free standing First

18   Amendment right to receive legal advice from other inmates.  *Shaw v. Murphy*, 532 U.S.

19   223, 231 n.3 (2001).  Rather, inmates only have the right to receive legal advice from

20   other inmates when it is necessary to ensure a reasonably adequate opportunity to

21   present claimed violations of fundamental constitutional rights.  *Id.*  It is also far from clear

22   that a right to provide legal advice follows from a right to receive legal advice.  *Blaisdell*

23   *v. Frappiea*, 729 F.3d 1237, 1245 (9th Cir. 2013).  In *Blaisdell*, the Ninth Circuit found that

24   an inmate could not state a First Amendment retaliation claim based on assisting another

25   inmate with legal work in part because it was uncontested that the prison provided for a

26   law library and other legal assistance.  (*Id.*)

27   _____

28          [6] The standard for stating a First Amendment retaliation claim is addressed in
     Section II(A)(1)

1    The Court finds that Plaintiff states a colorable First Amendment retaliation claim

2  based on the allegations that he faced discipline for helping other inmates with their legal

3  work.  Unlike the inmate in *Blaisdell*, Plaintiff alleges that SCC does not provide inmates

4  with adequate access to a law library, and that as such, inmates require his help to bring

5  forward their civil rights complaints.  Based on this allegation, other inmates at SCC had

6  a First Amendment right to receive legal advice from Plaintiff.  *Blaisdell* and *Shaw* did not

7  address whether a right to receive legal advice also creates a right to give that legal

8  advice.  However, as these cases left that issue open, the Court finds that purposes of

9  this preliminary screening, Plaintiff's allegations are sufficient to state a colorable First

10  Amendment retaliation claim.  This claim will proceed against Defendant Loza.

11                              **2.  Retaliation for Grievances**

12    The Court finds that Plaintiff states a colorable First Amendment retaliation claim

13  against Defendants Escolata, Torres, and Grijalva.  The Court liberally construes the

14  complaint as alleging that in retaliation for Plaintiff's filing of grievances, Grijalva

15  conducted a retaliatory cell search.  Grijalva removed Plaintiff's personal belongings from

16  his cell and then intentionally lost them.  Defendants Escolata and Torres were aware

17  that Grijalva was retaliating against Plaintiff for his grievances, but they did not do

18  anything to intervene.  These allegations are sufficient to state a colorable claim on

19  screening.  This claim will proceed against Defendants Escolata, Torres, and Grijalva.

20    The Court finds that Plaintiff fails to state a colorable supervisory liability claim

21  against Defendants Thomas and Hininger.[7]  Plaintiff alleges that he notified these

22  Defendants about the improper search through the grievance process.  Based on this

23  allegation, these Defendants did not know about the alleged retaliation until after the

24  retaliation had occurred.  As such, they could not have acted to prevent the alleged

25  retaliation.  The Court dismisses Defendants Thomas and Hininger from this claim without

26  prejudice.

27

28       [7] The standard for stating a supervisory liability claim is addressed in Section
II(A)(4)

### III.    CONCLUSION

For the foregoing reasons, it is ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file Plaintiff's complaint (ECF No. 1-1) and send Plaintiff a courtesy copy of the complaint.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count I will proceed against Defendants Thompson and Evangelista.

It is further ordered that Plaintiff's Eighth Amendment failure to protect claim in Count I will proceed against Defendants Estell, Thompson, Evangelista, Oliver, and Nash.

It is further ordered that Plaintiff's Fourteenth Amendment claim in Count I is dismissed without prejudice.

It is further ordered that Plaintiff's First Amendment free exercise of religion claim in Count II will proceed against Defendants Warner, Thomas, and Meares.

It is further ordered that Plaintiff's RLUIPA claim in Count II will proceed against Defendants Warner, Thomas, and Meares.

It is further ordered that Plaintiff's Fourteenth Amendment equal protection claim in Count II is dismissed without prejudice.

It is further ordered that Plaintiff's denial of access to the courts claim in Count III dismissed without prejudice.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count IV is dismissed without prejudice.

It is further ordered that Plaintiff's Fourteenth Amendment due process claim in Count V dismissed without prejudice.

It is further ordered that Plaintiff's Fourteenth Amendment equal protection claim in Count V dismissed without prejudice.

It is further ordered that Plaintiff's Eighth Amendment deliberate indifference to a serious medical need claim in Count VI will proceed against Defendants Hininger, Thomas, Dzurenda, Meares, and Marr.

It is further ordered that to the extent that Plaintiff is bringing any state law tort claims in Count VII, those claims are dismissed without prejudice.

It is further ordered that Plaintiff's constitutional claims in Count VII are dismissed as they are duplicative of his claims in Count I.

It is further ordered that Plaintiff's attempt to bring criminal charges in Count VIII is dismissed with prejudice, as amendment would be futile.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count IX based on being disciplined for helping other inmates with their legal work will proceed against Defendant Loza.

It is further ordered that Plaintiff's First Amendment retaliation claim in Count IX based on a retaliatory cell search will proceed against Defendants Escolata, Torres, and Grijalva.

It is further ordered that Defendants, Brian Stroud, Brian Williams, Timothy Filson, D. Fierro, Stephen George, Romero Aranas, Jo Gentry, Frank Dreeson, and J. Valenzuela are dismissed from the entirety of the case without prejudice.

It is further ordered that as to Defendants Estell, Thompson, Evangelista, Oliver, Nash, Dzurenda, and Mears:

1.      Given the nature of the claim(s) that the Court has permitted to proceed, this action is **STAYED** for **ninety (90) days** to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so.  The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end

of the 90-day stay.  If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response.  Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

2. "Settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve Plaintiff's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

3. If the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee.  This fee cannot be waived.  If Plaintiff is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account.  28 U.S.C. § 1915(b).  If Plaintiff is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

4. If any party seeks to have this case excluded from the inmate mediation program, that party shall file a "motion to exclude case from mediation" on or before 21 days from the date of this order.  The responding party shall have 7 days to file a response.  No reply shall be filed.  Thereafter, the Court will issue an order, set the matter for hearing, or both.

5. The Clerk of the Court shall electronically **SERVE** a copy of this order and a copy of Plaintiff's complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service.

6. The Attorney General's Office shall advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement.  No defenses or objections, including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

It is further ordered as to Defendants Warner, Thomas, Hininger, Marr, Loza, Escolata, Torres, and Grijalva:

1. This action is **STAYED** for **ninety (90) days** to allow Plaintiff and the NDOC

1   Defendants an opportunity to settle their dispute before an answer is filed or the discovery

2   process begins.   The Court encourages Defendants Warner, Thomas, Hininger, Marr,

3   Loza, Escolata, Torres, and Grijalva to contact the Attorney General's Office for purposes

4   of participating in settlement discussions with Plaintiff.

5        2.     As discussed below, Plaintiff, through the U.S. Marshal's Office, shall serve

6   Defendants Warner, Thomas, Hininger, Marr, Loza, Escolata, Torres, and Grijalva for the

7   limited purpose of engaging in settlement discussions during the 90-day stay.

8        3.     Defendants Warner, Thomas, Hininger, Marr, Loza, Escolata, Torres, and

9   Grijalva shall advise the Court within **twenty-one (21) days** of service whether they will

10   enter a limited notice of appearance for the purpose of settlement.   No defenses or

11   objections, including lack of service, shall be waived as a result of the filing of the limited

12   notice of appearance.

13        4.     If Defendants Warner, Thomas, Hininger, Marr, Loza, Escolata, Torres, and

14   Grijalva choose to engage in settlement discussions, they shall file a version of the report

15   form attached to this order regarding the results of the 90-day stay, even if a stipulation

16   for dismissal is entered prior to the end of the 90-day stay.   The report shall be filed on or

17   before **ninety (90) days** from the date this order is entered.

18        5.     At the conclusion of the 90-day stay, if the parties proceed with this action,

19   the Court will then issue an order setting a date for Defendants Warner, Thomas,

20   Hininger, Marr, Loza, Escolata, Torres, and Grijalva to file an answer or other response.

21   Following the filing of an answer, the Court will issue a scheduling order setting discovery

22   and dispositive motion deadlines.

23        6.     The Clerk of Court **SHALL ISSUE** summonses for Defendants Warner,

24   Thomas, Hininger, Marr, Loza, Escolata, Torres, and Grijalva, **AND DELIVER THE**

25   **SAME**, along with the complaint (ECF No. 1-1), to the U.S. Marshal for service.

26        7.     The Clerk of the Court also **SHALL SEND** to Plaintiff **eight (8)** USM-285

27   forms.  The Clerk also shall send enough copies of the complaint (ECF No. 1-1) and this

28   order to the U.S. Marshal for service on Defendant(s).  Plaintiff shall have **thirty (30) days**

within which to furnish to the U.S. Marshal the required USM-285 forms with relevant information as to Defendants Warner, Thomas, Hininger, Marr, Loza, Escolata, Torres, and Grijalva on the forms.

8.    Within **twenty (20) days** after receiving from the U.S. Marshal a copy of the USM-285 forms showing whether service has been accomplished, Plaintiff must file a notice with the Court identifying which Defendants were served and which were not served, if any.

9.    If Plaintiff wishes to have service again attempted on an unserved Defendant(s), then a motion must be filed with the Court identifying the unserved Defendant(s) and specifying a more detailed name and/or address for said Defendant(s), or whether some other manner of service should be attempted.

DATED THIS ⎯⎯ 17 ⎯⎯ day of September 2020.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MANUEL WINN, | Case No. 2:19-cv-00613-KJD-NJK |
| Plaintiff, | REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |
| v. | |
| JAMES DZURENDA, et al., | |
| Defendants. | |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed.  The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay.  By filing this form, the Office of the Attorney General hereby complies.

///

///

///

///

///

///

///

///

///

///

///

- 28 -

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation*

*of dismissal*.)

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____        _____
　　　　　　　　　　　　　Print　　　　　　　　　　　　　　　　　Signature

Address: _____        Phone:

　　　　　　　_____        _____

　　　　　　　　　　　　　　　　　　　　　　　　　Email:
　　　　　　　　　　　　　　　　　　　　　　　　　_____